## Niagara Fire Insurance Co. v. D. Heenan & Co., for the use of The Northwestern Mutual Life Ins. Co.

1. CONTRACTS—*Interpretation of Insurance Policies.*—Where two interpretations of a policy, equally fair, may be given, that which gives the insurer the greater indemnity and most fairly covers the loss, will prevail. The contract is to be construed liberally in favor of protecting the insured.

2. INSURANCE—*Reasons for the Rule of Construction.*—The rule of

construction of insurance contracts rests upon two reasons: first, the courts will not readily apply to any contract a construction which tends to narrow the range and limit the force of the principal obligation; and, second, such contracts are signed by the insurer only, and are usually expressed in language prepared by it.

3. SAME—*General and Special Policies on the Same Property.*— Where there are general policies upon an entire building. and special policies upon parts of it, there can be no theory of contribution or apportionment among the several policies which will relieve the general policies from liability to their full amount until the insured has received complete indemnity for his loss.

**Assumpsit,** on an insurance policy. Trial in the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Finding and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1898. Affirmed. Opinion filed April 11, 1899.

PADEN & GRIDLEY, attorneys for appellant, contended that policies of insurance are to be considered and construed as a whole, and particular clauses or passages are not to be wrested from their context so as to destroy the unity of the contract and create conflict where there should be agreement; but one part is to be elucidated by the other, so as to reconcile them, if practicable, to one common intent or design, present to the minds of the contracting parties. Merchants Ins. Co. v. Edmond, Davenport & Co., 17 Gratt. (Va.) 138.

Paragraphs and clauses of policy should not be construed so as to make them conflict with each other, if such a construction can be avoided. They should be construed so as to make them harmonize, if such a construction is possible; and so as to give to each and all their terms full force and operation. The intention of the parties is the end and object and construction of all instruments. Cobb v. Ins. Co. (N. A.), 17 Kan. 492.

Contracts of insurance are to be construed as other contracts. All parts of the contract are to be taken together; and they shall be liberally construed; and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties, and no portion of it shall receive such a construction as will tend to defeat

the obvious general purpose of the parties entering into the contract. Crane v. City Ins. Co., 3 Fed. Rep. 558; Barber v. F. & M. Ins. Co., 16 W. Va. 658; Merrill v. Agricultural Ins. Co., 73 N. Y. 452; State Ins. Co. v. Schreck, 27 Neb. 527; Johnson v. Humboldt Ins. Co., 91 Ill. 92; Merchants Ins. Co. v. Edmond, Davenport & Co., 17 Gratt. (Va.) 138; Cobb v. Ins. Co. (N. A.), 17 Kan. 492; 1 Wood on Insurance, Sec. 55, 56.

It is stated by many courts as a general proposition that the parties between whom the question of fixtures arises may by their agreements determine the character of annexations to real estate; that they may consider as personalty what the law regards as realty, and what the law regards as personalty they may consider as realty, and whatever their agreements the courts will enforce. Am. & Eng. Enc. of Law, Vol. 8, p. 16, and cases therein cited.

An article which would otherwise be deemed a fixture may, by severance and the understanding of the parties, become a chattel. Sampson v. Graham, 96 Pa. St. 405.

When all the parties, as, in this case, the owner and the mortgagees, have seen fit to treat what might otherwise be fixtures and part of the realty as personal property, by their agreements, and thus sever them from the freehold and license their removal, the law will consider such fixtures, as between the parties, personal property to all intents and purposes. Smith v. Waggoner, 50 Wis. 155.

It is a well settled rule of law that parties themselves may, by express agreement, fix upon chattels annexed to realty whatever character they may have agreed upon. Property which the law regards as fixtures may be by them considered as personalty, and that which is considered in law as personalty they may regard as a fixture. Whatever may be their agreement, courts will enforce it. Fratt v. Whittier, 58 Cal. 126, citing N. Y., Wis. and Mass. cases; 8 Am. & Eng. Enc. of Law, 61; Merrit v. Judd, 14 Cal. 60; Frederick v. Devol, 15 Ind. 357; Warner v. Kenning, 25 Minn. 173; Robertson v. Corsett, 39 Mich. 777; Foster v. Prentiss, 75 Me. 279; Smith v. Waggoner, 50 Wis. 155;

Sampson v. Graham, 96 Pa. St. 405; Vaughn v. Haldeman, 33 Pa. St. 522.

P. J. Lucey and Bates & Harding, attorneys for appellee.

When an insurance company writes insurance covering a three-story, brick composition roof building and basement, additions, foundations and area walls, that policy covers every part of the building; everything that in any measure forms an essential element of it, and embraces everything appurtenant and necessary to the main building, and used, though not connected with it. Wood on Insurance, page 193, Sec. 85; Irvin v. N. Y. Central Ins. Co., T. & C. (N. Y.) 213; Workman v. Louisiana Ins. Co., 2 La. 507; May on Insurance, Sec. 420, page 956; citing Blake v. Exchange Mutual Ins. Co., 12 Gray (Mass.), 265; White v. Mutual F. Ins. Co., 8 Gray (Mass.), 566; Ostrander on Insurance (2d Ed.), Sec. 159, page 425.

The steam-heating, elevator, plumbing, gas-piping and fixtures, which under the agreed state of facts in this case, were "built into this building in the usual and ordinary way at the time said building was erected, and served their purpose until the time of the fire," constituted a part of this building, and the water pipes, soil pipe, electric wires, etc., which were built into this building, also constituted a part of the building. Thielman et al. v. Carr et al., 75 Ill. 391, 392; Otis v. May, 30 Ill. App. 581; Spinney v. Barbe, 43 Ill. App. 586; Curran v. Smith, 73 Ill App. 69; Kaestner v. Day, 65 Ill. App. 623.

Contracts of insurance will be construed so as to afford indemnity to the assured, and where the terms of a policy are susceptible, without violence, of two interpretations, that construction most favorable to the insurance should be adopted. Wood on Ins. (last Ed.), 141; and the large number of cases there cited; Ostrander on Ins. (2d Ed.), Sec. 179, page 455; Illinois Mut. Ins. Co. v. Hoffman, 132 Ill. 522; May on Ins., Secs. 174 and 175; Schroeder v. The Trade Ins. Co., 109 Ill. 157; Getman v. Guardian F. Ins. Co., 46 Ill. App. 489; Niagara F. Ins. Co. v. Scammon, 100 Ill. 649.

When there is general insurance covering on a building in its entirety, and also specific insurance covering upon certain portions of the building specifically, if the building is destroyed by fire, then both the general and the specific insurance are liable for the loss upon the building. Ostrander on Ins. (2d. Ed.), Sec. 206; Page et al. v. Sun Ins. Office, 64 Fed. Rep. 194; also reported in 25 Ins. Law Journal, 865; Chandler v. Ins. Co. of N. A., 41 Atl. Rep. 502; Fairchild v. L. & L., F. & L. Ins. Co., 51 N. Y. 65; Cromie v. Kentucky & L. Mut. Ins. Co., 15 B. Mon. (Ky.), 432; Angelrodt v. Delaware Ins. Co., 31 Mo. 593; Joyce on Insurance, Secs. 221 and 222; Lebanon Mut. Ins. Co. v. Kepler, 106 Pa. St. 28.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

In this suit by appellee against appellant, upon an insurance policy, defendant pleaded the general issue, and there was a stipulation that under that plea defendant might introduce any evidence competent under any special plea which could have been pleaded. A jury was waived. The cause was submitted upon a written stipulation as to the facts; propositions of law were presented and ruled upon by the court; and there was a finding for plaintiff in the sum of $3,074.16, and judgment thereon, and defendant appeals. The interest of the Northwestern Mutual Life Insurance Company arises from a mortgage upon the premises insured, protected by a clause in the policy. The face of the policy was $3,000, and the $74.16 was allowed as interest. The agreement was, to pay within sixty days after due notice, ascertainment, appraisement and satisfactory proofs of loss received by defendant. This process was fully completed February 24, 1898, except that certain omitted items were presented March 9, 1898. A computation of interest at five per cent from sixty days after either of said dates up to the time the court below decided this cause will produce a result exceeding $74.16, so that if the principal liability of defendant was properly fixed at $3,000, the interest need not be further noticed.

D. Heenan & Company, a corporation, owned and conducted a department store at Streator. Defendant issued the policy in suit October 7, 1897, to run one year from that date, and on November 22, 1897, the property insured was destroyed by fire. Among other stipulations, the policy contained the following: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs." Also "This company shall not be liable * * * unless liability is specifically assumed hereon for loss to * * * store or office furniture or fixtures;" also, "In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss;" also, "This company shall not be liable under this policy for a greater proportion of any loss on the described property * * * than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property."

The principal controversy arises over the effect to be given a certain printed slip. D. Heenan & Company had, at the time of the fire, many policies of insurance in force, and to each of them a like printed slip had been attached descriptive of the property insured. This slip had been prepared by D. Heenan & Company and two insurance agents at Streator, and D. Heenan & Company had required the companies issuing its policies to use such slips in writing the insurance. This printed slip consisted of three items, each preceded by a dollar sign and a space in which was to be written the amount of insurance upon that item. The first item was as follows:

"$—— on its three-story brick, composition roof build-

ing and basement, additions, foundations and area walls. Occupied principally as a general store, postoffice and offices. Situated on the northwest corner of Main and Park streets, Streator, Illinois."

The second item was upon the merchandise, and is not material to this controversy. The third item was as follows:

"$——— On its store furniture and fixtures, consisting in part of awnings, counters, shelving, bins, butter boxes, refrigerators, desks, chairs, safes, wall paper racks, track, ladders, scales, gas and water pipes, stoves and piping, steam boilers and pumps, steam heating apparatus and connections, hydraulic engine and elevator, two Babcock fire extinguishers, coffee grinders, brick encased coffee roaster, small upright steam engine with appurtenances, soda fountain, with attachments and furnishings, one ventilating fan and electric motor and attachments, and such other furniture and fixtures as are necessary for conducting its business. All while contained in the above described building and basement, additions and areas under sidewalk adjoining said building."

The policy issued by defendant had the figures "3,000" filled in after the dollar sign before the first item of the slip, and had a wavy ink line drawn through the space after the dollar sign in front of the second and third items.

Plaintiff had policies amounting to $35,000 on the first item of said slip, $80,000 on the second item of said slip, and $4,000 on the third item. No one policy named an amount opposite more than one item. The total loss to D. Heenan & Co. under the second item, was $120,000, and the insurance companies paid the policies upon said item in full in the sum of $80,000, the loss upon that item being $40,000 in excess of the insurance carried thereon. The total loss and damage to D. Heenan & Co., under the third item, was $13,000, and the insurance companies paid the policies upon said item in full in the sum of $4,000, the loss upon that item being $9,000 in excess of the insurance written specifically upon that item.

The proofs of loss presented to defendant claimed a loss of $47,438, upon the building, and claimed from defendant $3,000 upon its policy. The parties disagreed and appraisers were selected, who made a written report on February

24, 1898. The appraisers, while agreeing upon the amount of loss upon each article named, disagreed as to whether certain specific things mentioned in the third item of said slip should be included in said loss and damage under said first item (which was purely a question of law), and they therefore made two reports, which, omitting dates and signatures, were as follows:

First report: "We have carefully examined the premises and remains of the property hereinbefore specified in accordance with the foregoing appointment, and have determined the sound value to be on the first item..........$35,648

Total...................................$35,648

And the loss and damage to be on first item.$32,250

Total...................................$32,250."

Second report: "We, the undersigned, chosen to estimate on the D. Heenan & Co. building at Streator, Illinois, find that the loss on steam-heating, elevator, plumbing, gas piping and fixtures amounts to the sum of $5,544, as follows:

Gas piping and fixtures.............$  550
Heating ...........................  4,000
Elevator...........................  2,000
Plumbing ..........................   380
                                   ——————  $6,930
Twenty per cent. depreciation.......        1,386
                                            ——————
Balance.....................................$5,544."

It was stipulated that the items enumerated in the second of said reports were placed and built into said building in the usual and ordinary way at the time said building was erected, and served their purpose until the time of the fire; that they included all the items of the kind enumerated then contained in the building, and were not included in the $32,250 award returned by said appraisers. Afterward, on March 9, 1898, D. Heenan & Co. sent additional proofs of loss specifying and claiming for certain pipes, valves, tubing, electric switches and wire, etc., which had been omitted by the appraisers from the report, amounting to $1,289.50. It was stipulated that the appraisers, without any fraud or

circumvention, omitted from consideration the articles last referred to, and that the value of said articles was $1.289.50.

Defendant insured the first item for $3,000. The total insurance written upon that item was $35,000. The award fixed the loss upon that item (excluding the matters embraced in the appraisers' second report) at $32,250. Defendant admits it is liable for three thirty-fifths of the $32,250, but insists that is the extent of its liability. Its position is that the form of the printed slip, and drawing an ink line through the space left for the amount in front of the third item, excluded from its insurance upon the building the gas piping and fixtures, heating, elevator and plumbing embraced in the appraisers' second report, and also the omitted items included in the additions to the proofs of loss presented by D. Heenan & Co., March 9, 1898. Plaintiff claims that the items referred to in the appraisers' second report were a part of the building and were covered by defendant's insurance upon the building in the first item; that as the loss on the third item was $13,000, and the insurance thereon was but $4,000, there was an excess of loss over insurance on that item of $9,000, and as the loss upon the parts of said third item which were parts of the building and are enumerated in the appraisers' second report amounted to $5,544, said loss of $5,544 was not paid by the payment of said $4,000 insurance on said third item; that said sum of $5,544 should therefore be added to the $32,250, assessed as the loss on the building with said parts omitted, thus making the loss on the building insured under said first item $37,794, or $2,794 in excess of the entire insurance upon the building, and thus showing a liability against defendant to pay the full face of its policy. Plaintiff also insists that the $1,289.50, omitted by the appraisers, should be added to this, thus further increasing the excess of the loss upon the building over the insurance written thereon.

The stipulation is that the gas piping and fixtures, heating, elevator and plumbing upon which the appraisers found a loss of $5,544 in addition to the $32,250 of loss upon the building, " were placed and built into said building in the usual and ordinary way at the time said building was erected,

and served their purpose until the time of the fire." We entertain no doubt that said gas piping and fixtures, heating, elevator and plumbing, so built into the building at the time of its erection and thenceforth used in connection therewith, were a part of the building, and would be covered by an ordinary policy of insurance upon the building. This seems to be conceded by defendant in argument. It is also true, as contended by defendant, that the owner of such property, though it is realty, can contract to have it treated as personalty; and that an insurance company and the owner of a building may enter into a contract that the company will insure all the building except the gas piping and fixtures, heating apparatus, elevator and machinery connected therewith, and the plumbing, and may agree that an insurance on the building shall not cover those parts of the building; and the owner of the building can not under such a policy recover for the loss of those parts of his building. This is but equivalent to saying parties may make their own contracts. The question here is, what did these parties intend upon that subject? How ought we to interpret and construe what they did put into this policy?

It may be this printed slip, as filled out in the policy here in question, could be construed to mean that the parties intended the insurance on the building named in the first item should not cover the gas and water pipes, steam boilers and pumps, steam heating apparatus and connections, hydraulic engine and elevator, and upright steam engines named in the third item. But we think it an equally reasonable explanation of the course pursued that the parties, having covered the entire building by the insurance of the first item, considered that parts of the building, enumerated in the third item, were already insured under the general language of the first item, and that it was unnecessary to name another sum to cover them in the third item, especially as this was designed to be a policy upon the building only, and many of the articles in the third item were mere personal property and would have to be in some way eliminated therefrom if the third item was also to be used in placing insurance upon the building only. Where two

interpretations of a policy, equally fair, may be given, that which gives the insured the greater indemnity and will most fully cover the loss will prevail. The contract is to be construed liberally in favor of protecting the insured. (1 May on Insurance, Secs. 174, 175; 1 Wood on Insurance, Sec. 58; Ostrander on Insurance, Sec. 179; Aurora Fire Insurance Co. v. Eddy, 49 Ill. 106; Commercial Insurance Co. v. Robinson, 64 Ill. 265; Niagara Fire Insurance Co. v. Scammon, 100 Ill. 644; Healey v. Mutual Accident Association, 133 Ill. 556.) These rules rest upon two reasons: first, the courts will not readily apply to any contract a construction which tends " to narrow the range and limit the force of the principal obligation;" and, second, such policies are signed by the insurer only and are usually expressed in language prepared by it. It is urged this rule should not apply here, because, as is alleged in argument, defendant did not prepare these slips. The evidence is, they were prepared by D. Heenan & Co. and two insurance agents at Streator. The record is silent as to whether they were agents of this particular insurance company, except that the agents who countersigned this policy at Streator are not the persons who assisted in preparing these slips. But whether agents of defendant or not, they were insurance agents, preparing a a slip to be inserted in a large number of policies, and they must be assumed to have prepared them in the interest of the insurance companies and not of the insured. We are of the opinion, therefore, that here the court should adopt the construction that the parties intended insurance upon the building and everything that was a part thereof, and omitted to use item three because everything named therein, which was a part of the building, was already insured under item one. Further, we do not think it is a logical conclusion that because defendant did not write separate insurance upon the parts of the building specially named in item three of the printed slip, therefore it did not intend to insure the whole building under its general designation in item one. The more reasonable conclusion seems to us to be that the parties thought it unnecessary to place insurance upon parts

of that which was already covered as a whole. We are therefore of opinion that the insurance on the building covered not only the loss of $32,250, specified in the appraisers' first report, but also the loss of $5,544 appraised in the second report. This total exceeded the insurance on the building and showed defendant liable for the full amount of its policy. It is therefore unnecessary that we should determine whether the loss of $1,289.50 upon the articles omitted by the appraisers (which articles seem also to have been a part of the building) formed a just claim against insurance on the building after being omitted from consideration by the appraisers " without any fraud or circumvention."

If, however, it be said that the insurance upon item three should be in part applied upon those portions of said item which belonged to the building, the result is not changed. The loss upon item three was $13,000. The loss upon those items therein which belonged to the building was appraised at $5,544, leaving a loss of $7,456 on those parts of said item three which did not belong to the building. If the $4,000 insurance on item three be divided *pro rata* between said two classes of property included within item three, the share to be applied to the building would be $1,705.85. If we apply that upon the loss of $5,544 upon those parts of the building insured under item three, $3,838.15 of that loss would be left unpaid. Adding this to the appraised loss of $32,250 upon the other parts of the building, leaves the unpaid loss upon the building $36,088.15, being in excess of the $35,000 of insurance upon item one. Put it another way. To the loss under item one of $32,250 add the loss upon the parts of the building included in item three, appraised at $5,544, and we have a total loss on the entire building of $37,794. To the insurance of $35,000 on item one, add the proportion of the insurance on item three which is on parts of the building, above found by computation to be $1,705.85, and we have the total insurance upon the building of $36,705.85. In other words, the total loss on the building exceeds the total insurance on the building, with-

out taking into account the loss of $1,289.50 omitted by the appraisers.

We are also of opinion that where there are general policies upon an entire building and special policies upon parts of it, there can be no theory of contribution or apportionment among the several policies which will relieve the general policies from liability to their full amount until the insured has received complete indemnity for his loss. If the loss upon the building is greater than the sum of all the policies, general and special, thereon, the general policies must be paid in full.

The rulings of the court below upon the propositions of law were substantially in harmony with the views here expressed. The judgment is affirmed.