## Lehigh Valley Transportation Company v. Post Sugar Company.

### Gen. No. 4,700.

1. VERDICT—*jury should not be required to render more than one.* It is improper to require a jury to render more than one verdict in a single cause, as, in this case, to direct a verdict and have the jury return a verdict as to one defendant before the conclusion of the case as to the other.

2. JURISDICTION—*when not lost notwithstanding judgment in favor of resident defendant.* Where two defendants, one a resident of the county in which such action is brought and the other a non-resident of such county, are joined, judgment is properly rendered against the non-resident defendant, where such defendant appears and defends the action, regardless of the disposition of the case as to the other defendant.

3. BILL OF LADING—*how to be construed.* A bill of lading having been prepared by the carrier, is to be construed most strongly against it.

4. FREIGHT—*carrier may demand prepayment of.* A carrier is within its rights in demanding that freight charges be paid by the shipper in advance.

5. DECLARATION—*how far allegations of, must be proven in action of tort.* In an action of tort, the plaintiff need only prove enough of the averments of its declarations to establish a cause of action.

Action on the ·case. Appeal .from the Circuit Court of Peoria county; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the April term, 1906. Affirmed upon *remittitur.* Opinion filed October 16, 1906.

ULLMAN & HACKER and PAGE & WEAD, for appellant.

SHEEN, MILLER & DAVID, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This is an action on the case brought in the Circuit Court of Peoria county by the Post Sugar Company, Limited, a partnership, against the Lehigh Valley Transportation Company and the Chicago Rock Island and Pacific Railway Company, hereinafter referred to as the transportation company and the railway company, respectively, to recover for the loss of fifty cases of chocolate shipped by Wilbur & Sons from Philadelphia to plaintiff at Peoria Heights, Illinois, and which never reached its destination. The first count of the declaration as amended set up the bill of lading and charged a failure to deliver thereunder. The second count as amended charged that the defendants received these goods to be safely carried from· Philadelphia to Prospect Heights, Peoria, and a failure to perform due to the negligence of the defendants and the loss of the goods thereby. The goods were in fact billed to Peoria Heights, but no point is made here upon the difference between Prospect Heights in the declaration and Peoria Heights in the proof. Defendant pleaded the general issue. Upon a jury trial, at the close of plaintiff's proofs, the railway company,

602 APPELLATE COURTS OF ILLINOIS.

VOL. 128.]    Lehigh Valley Trans. Co. v. Post Sugar Co.

under an instruction given by the court at its request, was found not guilty, and thereupon the transportation company asked leave to withdraw its plea in bar and to file a plea to the jurisdiction of the court. That motion was denied. It then asked the court to instruct the jury to find it not guilty, and that motion was denied. The same motion to instruct for defendant was made and denied at the close of all the proofs. Plaintiff had a verdict for $1,195.94. Plaintiff moved for a new trial as to the railway company, and the transportation company also moved for a new trial. Both motions were denied, and plaintiff had judgment on the verdict against the transportation company, from which it appeals.

Did the court err in not permitting appellant to withdraw its plea in bar and to file a plea to the jurisdiction of the court? It is to be noted that appellant did not except to the action of the court in directing a verdict for the railway company, and did not make that action one of the grounds of its motion for a new trial, and has not assigned that action as error. Appellee has not assigned cross-errors. The action of the court as to the railway company is, therefore,, acquiesced in by all parties here. When appellant asked leave to plead to the jurisdiction of the court the railway company was still in court. It only had a verdict. The action of the court in causing a verdict to be rendered as to one defendant before the completion of the trial as to the other defendant, was not warranted by common law practice or by any statute of which we are aware. In our opinion a jury should not be called upon to render two verdicts at different times in the same case, and when the court decided it could not then dispose of the case as to all defendants, action upon the motion and instruction presented by the railway company should have been withheld until the close of the case. But this was a mere irregularity. Plaintiff made a motion for a new trial as to the railway

company and filed points in support thereof. The motion by plaintiff for a new trial as to the railway company, was denied on the same day that the motion of appellant for a new trial was denied, and there was a judgment for the railway company for its costs on the same day that there was a judgment against appellant. Until that time both defendants were in court. When appellant asked leave to plead to the jurisdiction, it could not be known that the verdict for the railway company might not be set aside. The railway company was served in Peoria county, where the suit was brought. Appellant was served in Cook county and was not found or served in Peoria county. Section two of the Practice Act provides that where there is more than one defendant, such an action may be brought in the county where either defendant resides, and the plaintiff may have a writ for the non-resident defendant to the county where he resides, and that if a verdict shall not be found or a judgment rendered against the resident defendant, judgment shall not be rendered against the non-resident defendant, unless he appears and defends the action. Appellant did appear and defend the action, and the language of the statute, therefore, permits a judgment against it. In Hobson v. Tritt, 69 Ill. App. 215, plaintiff dismissed his suit as to the resident defendant, and it was held that the non-resident defendant was then entitled to withdraw his plea to the merits and to file a plea to the jurisdiction. That was necessary to prevent a defendant from being entrapped. That case is unlike the one before us, where the resident defendant participated in the trial and remained in the cause till final judgment as to both defendants. Indeed that case recognizes that in such a case as this the non-resident defendant cannot avoid the jurisdiction of the court after having appeared and defended.

Appellee ordered fifty cases of chocolate of Wilbur & Sons of Philadelphia, to be shipped to it at Peoria

604    APPELLATE COURTS OF ILLINOIS.

VOL. 128.]    Lehigh Valley Trans. Co. v. Post Sugar Co.

Heights via the Chicago, Rock Island & Pacific Railway Company. The goods were delivered to an agent in Philadelphia, who issued first a receipt and afterwards a bill of lading for the goods, and they were so transported that they reached Chicago in charge of appellant in one of its boats. A teamster hauled the goods to the freight depot of the railway company in Chicago. Peoria Heights was a place near Peoria where the railway company had no agent. Its rule, therefore, was to require prepayment of freight shipped to that point. Peoria Heights was for that reason called a "prepay station." The freight agent of the railway company in Chicago informed the teamster that the railway company would not receive the goods for transportation till its freight charges were prepaid. The goods were left by the teamster inside the warehouse. The railway company from that time on treated the goods as in its hands as warehouseman, and refused to issue a receipt for them or to forward them till its freight was prepaid. The freight was never prepaid, and the goods were not forwarded. A few days later there was a fire in the freight house of the railway company, and these goods appeared to be slightly injured by water used in extinguishing the fire. Conversations over the telephone and correspondence followed. Some one at the office of the railway company had just told some one at the office of appellant that the railway company would arrange to forward the goods and collect the freight at the destination. when the railway official learned of the fire and its possible results to these goods, and the proposition was immediately rescinded. There was much correspondence between plaintiff, the railway company and appellant, but plaintiff was unable to get the property. The railway company refused to transport the goods as a carrier, for fear if they were found to be damaged at the destination it would be held liable as a common

carrier, whereas it claimed its liability, if any, was only that of a warehouseman. It offered to deliver the goods to plaintiff in Chicago, or to any one else, on the order of appellant. Appellant declared it had delivered the goods to the railway company and had no further responsibility for them. What finally became of the goods does not appear, but plaintiff has never received them.

Appellant insists that the bill of lading introduced in evidence was not issued by it. Its heading reads as follows:

"LEHIGH VALLEY TRANSPORTATION COMPANY
RAIL AND LAKE
VIA PHILADELPHIA & READING RAILWAY COMPANY. . .

For rates and other information apply to office of Lehigh Valley Transportation Company, 716 Chestnut Street.

W. P. HENRY, Manager, Buffalo, N. Y.

GEO. W. MITCHELL, Agent, Philadelphia."

It is said in appellee's brief that on said bill of lading in evidence the words, "Lehigh Valley Transportation Company" are in large type, and that the words, "Philadelphia & Reading Railway Company" are in much smaller type, but this does not appear in the record before us. The bill of lading is signed, "G. M. Supplee, Agent," and below that signature are these words: "The signature of the agent here acknowledges only the receipt of the property and the charges advanced, if any." Beneath this the rate of freight on this shipment from Philadelphia to Peoria, Illinois, is stated, and that is signed "G. W. Mitchell, Agent, D." Beneath that signature are these words: "The signature of the agent here acknowledges only the rate given." Appellant owned a line of boats plying from Buffalo to Chicago, and its boat line did not reach Philadelphia. There was oral proof that appellant had an office in Philadelphia, and that it connected from Philadelphia over the Philadelphia & Reading Rail-

606    APPELLATE COURTS OF ILLINOIS.

VOL. 128.]    Lehigh Valley Trans. Co. v. Post Sugar Co.

road and the Lehigh Valley Railroad, and that appellant had a freight soliciting agent in Philadelphia. There was oral proof that appellant operated over the Philadelphia & Reading Railroad. A witness for defendant testified that Mitchell was an agent for the Lehigh Valley Railroad Company to solicit west-bound freight for that railroad company to be delivered to the appellant at Buffalo, and that he had no other duties concerning the appellant, but this witness afterwards admitted that he had no personal knowledge of what Mitchell's powers were concerning the appellant, and that testimony as to Mitchell's authority was excluded. There were letters in evidence written at Chicago by the agent there of appellant, and the letterhead upon which those letters were written contained the names of both the appellant and the Lehigh Valley Railroad Company, and it showed that they had the same office and agent in Chicago. There are other facts and circumstances appearing throughout the record to support our conclusion that this was the bill of lading of appellant.

The bill of lading stated on its face ''that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (see conditions on back hereof), and which are agreed to by the shipper and accepted by himself and his assigns as just and reasonable.'' In said bill of lading the company agreed to carry the property therein described ''to said destination, if on its road, otherwise to deliver to another carrier on the route to said destination.'' Appellant introduced in evidence certain printed matter on the back of the bill of lading, headed ''Uniform Bill of Lading Conditions,'' among which were the following:

''1. No carrier or party in possession of all or any property herein described shall be liable for any loss thereof or damage thereto by causes beyond its control or by floods or fire.

SECOND DISTRICT—A. D. 1906. 607

Lehigh Valley Trans. Co. v. Post Sugar Co.

"2. No carrier is bound to carry said property by any particular train or vessel or in time for any particular market, or otherwise than with as reasonable dispatch as its general business will permit.

"3. No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route; nor after said property is ready for delivery to the next carrier or to consignee. The amount of any loss or damage for which any carrier becomes liable, shall be computed at the value of the property at the place and time of shipment."

It is claimed by appellant that by the rules of law prevailing in Pennsylvania where this contract was executed the express assent of a shipper to limitations in a bill of lading is not necessary, but that mere notice thereof to the shipper binds him (Camden & Amboy R. R. Co. v. Baldauf, 16 Pa. St. 67; Verner v. Sweitzer, 32 Pa. St. 208; Pa. Cent. R. R. Co. v. Schwarzenberger, 45 Pa. St. 208; and Farnham v. Camden & Amboy R. R. Co., 55 Pa. St. 53), that the laws of Pennsylvania control the force and effect of the contract (Merchants' Despatch Transportation Co. v. Furthmann, 149 Ill. 68), and that, therefore, the conditions printed in the bill of lading and on the back thereof bind the shipper and therefore bind the consignee. We assent to these propositions. By the face of the contract plaintiff agreed "to deliver to another carrier on the route to said destination." By condition No. 3 on the back of the contract the carrier was not to be liable for loss or damage "after said property is ready for delivery to the next carrier." Thereupon appellant argues (a) that it was not liable, because it was ready to deliver the property to the next carrier; and that if this position is not sound, then (b) that it is not liable, because it did deliver the property to the next carrier. This is a printed contract prepared by the carrier, and if there is any conflict between its different parts, that interpretation should be adopted which is most in harmony with the purpose

608　　Appellate Courts of Illinois.

Vol. 128.]　Lehigh Valley Trans. Co. v. Post Sugar Co.

and effect of the agreement, which was to carry the goods from the shipper to the consignee and safely deliver them to the latter. This principle of construing equivocal expressions in a contract against the party who prepared it, is often applied in the case of insurance policies. Commercial Ins. Co. v. Robinson, 64 Ill. 265; Niagara Fire Ins. Co. v. Heenan, 81 Ill. App. 678. We, therefore, construe this contract to require appellant to deliver the goods to the next carrier.

Did appellant deliver the goods to the railway company? The railway company demanded prepayment of freight and refused to receive the goods for shipment till the freight was prepaid, but permitted them to be stored in its warehouse while awaiting prepayment of the charges, and such charges never were prepaid and it never received the property for shipment. The reason the railway company assigned for this refusal was, that this was a "prepay station," or a station at which they had no agent to collect charges, and therefore their rules required them to collect the charges in advance. It appeared that the consignee had some general arrangement with the agent of the railway company at Peoria by which he was permitted to receive freight at Peoria Heights and pay the charges afterwards to the Peoria office; and it is true that the knowledge of the agent at Peoria was the knowledge of the railway company itself. We regard these facts as immaterial as between appellant and the consignee. The material fact here is that the railway company did demand the freight charges in advance and did refuse to receive the property for transportation till the charges were prepaid. Even if it had a different prior practice with appellee that was only for appellee's accommodation, and it had a right to abandon that practice at any time. It had a right to demand prepayment. Its demand was not unreasonable. Appellee proved a custom that where goods are transported to a connecting line, if the connecting carrier requires the payment of freight in advance, the deliv-

Lehigh Valley Trans. Co. v. Post Sugar Co.

ering line shall pay it. But we regard that as unimportant. As the appellant had agreed to deliver the goods to the next carrier, it had thereby agreed to do whatever was necessary to effect such delivery. It is also to be noted in this connection that appellant by its bill of lading had fixed a through rate for this freight from Philadelphia to Peoria, which rate it was-bound to secure to the consignee. If it had not been the duty of appellant to prepay the freight, it would have been its duty at least to notify the parties in interest at once, that they might take some action. Five days intervened between the time the goods were left in the warehouse of the railway company and the time of the fire, and appellant had not notified either consignee or shipper. We are of opinion that the proof showed that the appellant had not delivered the goods to the next carrier, and that it was liable for the loss.

Appellant asserts that there is a clause in this contract which exonerates the carrier from liability for loss or damage, unless a claim in writing therefor is made within thirty days after due time for the delivery of the property, and that no such claim in writing within thirty days was shown, and that, therefore, plaintiff was not entitled to recover. We find nothing in the abstract to show that this point was made in the court below, and apparently appellant did not originally intend to make the point here, as we do not find that clause of the contract in the abstract. As the abstract does not show that the question was raised in the court below and does not set out any such clause of the contract, we do not feel called upon to discuss that proposition, further than to say that we think the evidence discloses reasons for holding the position untenable.

It is claimed that there is a variance between the proofs and the amended first count of the declaration. This was an action of tort against two defendants, and the same rule was not applicable as in assumpsit, and in order to entitle appellee to recover against appel-

lant, it was not necessary to prove a joint liability, though such liability was averred. I. C. R. R. Co. v. Foulks, 191 Ill. 57, is an illustration of the rule. Some of the averments of the amended first count were not established, but enough of those averments were proved to make a case against appellant.

Some of the criticisms upon the instructions may be well founded, but they did not lead to an erroneous result, except in one particular. The proof satisfies us that (excluding the question of freight charges) the value of the goods as' shipped, both at Philadelphia and at Peoria Heights, was $1,075. But there was proof that they were. to some extent damaged by moisture at the time of the fire, and we think appellant was not liable for that loss under a fair construction of the first condition on the back of the contract, as above quoted. The amount of that loss should have been left to the jury. It was taken from them by instructions given at appellee's request. While the witness on that subject once placed the damage at "ten or fifteen per cent." yet when his entire evidence is read together, it is evident it would not have warranted the jury in placing that loss at more than ten per cent. They might fairly put the loss at much less, but they could have put it as high as ten per cent. For the error of the instructions in excluding that element from the jury, the judgment must be reversed, unless appellee will correct it here, at its costs.

This opinion will be lodged with the clerk, without filing, and the parties will be notified, and if within seven days thereafter appellee files herein a *remittitur* of $119.59 of the judgment, the judgment will be affirmed in the sum of $1,076.35 at the costs of appellee; and if not, the judgment will be reversed and the cause remanded for a new trial.

Appellee having afterwards filed a *remittitur* of $119.59 of the judgment, said judgment is now affirmed in the sum of $1,076.35, at the costs of appellee.

*Affirmed upon remittitur.*